**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**CAROL FIKES AND DALE FIKES**                                                    **PLAINTIFFS**

v.                                                                                                **NO. 1:10-CV-278-SA-DS**

**WAL-MART STORES, INC.,**
**CLAIMS MANAGEMENT, INC., and**
**WAL-MART STORES EAST, LP**                                                    **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court are Motions to Dismiss [31, 33] for failure to state a claim filed by Defendants Wal-Mart Stores, Inc. and Claims Management, Inc. The Court finds as follows:

## FACTUAL ALLEGATIONS

On October 12, 2008, Plaintiff Carol Fikes was shopping in Wal-Mart Store No. 391 in Tupelo, Mississippi. Mrs. Fikes slipped on spilled grapes and fell, suffering severe injuries. Her husband, Dale Fikes, went to the store shortly after her injury and asked for the video surveillance tape of the fall. He was informed by the store manager that the videotape had been transmitted to corporate headquarters in Arkansas. Mr. Fikes asked that the video not be destroyed and was assured that the video would be preserved. Mr. Fikes was subsequently contacted by Eric Anderegg, an employee of Claims Mangement, Inc. (CMI). CMI is the claims handler for Wal-Mart Stores, Inc. and for their insurance carrier regarding customer incidents. Anderegg inquired about the medical condition of Mrs. Fikes. During that conversation, Mr. Fikes asked about the videotape, and Anderegg responded that the tape was "put up." When Mrs. Fikes later talked to Anderegg about the videotape, he told her, "Don't worry, the tape is in a secure place." The Fikes retained an attorney, Richard T. Phillips, who sent several letters to Anderegg requesting that the tape be preserved.

On August 25, 2009, Phillips received a letter from Colleen Peck, an employee of CMI. The letter stated in pertinent part:

> The above referenced claim has been transferred to me as of August 18, 2009. I will now be working with you. I received your letter dated August 20, 2009 requesting a response on a video. I apologize that you have not gotten a response prior to this. We do not have a video of the incident. However, a video would not change the fact that liability has been established.
>
> We are waiting on the demand from your office so we may start negotiations of settlement and resolve this matter.

According to Plaintiffs, Defendants Wal-Mart Stores, Inc. (WSI) and CMI then attempted to settle Plaintiffs' claim "with offers which were grossly low." Plaintiffs commenced the present suit against WSI and CMI. Plaintiffs amended their complaint to add Wal-Mart Stores East, LP (WSE), as a defendant after learning that it was the corporate entity responsible for the store where the fall occurred. The Amended Complaint currently before the Court asserts five counts: (1) premises liability/negligence; (2) loss of consortium; (3) tortious claims handling scheme; (4) civil conspiracy; and (5) aiding and abetting. The gravamen of the Complaint as to the latter three claims is that, according to Plaintiffs, Defendants employ a "scheme whereby those Defendants systematically and intentionally seek to frustrate the claims process—and the judicial system—by withholding and/or misrepresenting the existence of evidence for the benefit of Wal-Mart."

Defendants WSI and CMI have now filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). They allege that the premises liability and loss of consortium claims against them should be dismissed because they were neither the owner nor operator of the premises where the fall occurred.[1] They further argue that Mississippi does not recognize a civil cause of

---

[1] Defendant WSE has admitted it operated the store where the fall occurred.

action for a "tortious claim handling scheme" or "aiding an abetting." Finally, they argue that the complaint fails to state a claim for civil conspiracy. The videotape of the incident has since been located and produced in discovery.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." <u>Plotkin v. IP Axess Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005); <u>see also Iqbal</u>, 129 S. Ct. at 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

<u>Iqbal</u> outlined a two-step outline for a Court evaluating a motion to dismiss. <u>Iqbal</u>, 129 S. Ct. 1937 at 1950. First, the Court should identify the portions of the pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> Next, the Court looks to the well-pleaded factual allegations and then determines whether they plausibly give rise to an entitlement to relief. <u>Id.</u>

## DISCUSSION

Because this case is before the Court on diversity jurisdiction, state law (here, Mississippi law) supplies the applicable substantive authority. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78–79, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). To determine Mississippi law, we look to the final decisions

of the Mississippi Supreme Court. Moore v. State Farm Fire & Cas. Co., 556 F.3d 264, 269 (5th Cir. 2009). In the absence of a final decision by the Mississippi Supreme Court, this Court must make an "Erie guess" as to how that tribunal would rule on the issue if presented with the same case. Id. The Fifth Circuit has directed federal courts to consider the following factors in making such a determination: (1) decisions of the Mississippi Supreme Court in analogous cases, (2) the rationales and analyses underlying Mississippi Supreme Court decisions on related issues, (3) dicta by the Mississippi Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Mississippi courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries. Centennial Ins. Co. v. Ryder Truck Rental, Inc., 149 F.3d 378, 382 (5th Cir. 1998).

## I.     Premises Liability & Loss of Consortium

Under Mississippi law, it is well settled that "an owner, occupant, or person in charge of a premises owes to an invitee or business visitor a duty to exercise ordinary care to keep the premises in a reasonably safe condition or to warn the invitee of dangerous conditions, not readily apparent, which the owner or occupier knows of or should know of in the exercise of reasonable care." Waller v. Dixieland Food Stores, Inc., 492 So. 2d 283, 285 (Miss. 1986). Defendants WSI and CMI argue that because they neither owned or operated the premises where Ms. Fikes' fall occurred, the premises liability claim (and its derivative loss of consortium claim)[2] should be dismissed. Plaintiffs have failed to respond to or dispute this portion of Defendants' Motion to Dismiss. The Complaint fails to assert that WSI or CMI owned, operated, or was the entity in charge of the premises, and, as

---

[2] Under Mississippi law, "if the underlying personal injury claim is disposed of, the loss of consortium claim cannot be maintained on its own." J & J Timber Co. v. Broome, 932 So. 2d 1, 6 (Miss. 2008) (citing McCoy v. Colonial Baking Co., Inc., 572 So. 2d 580, 852 (Miss. 1990)).

4

noted above, Defendant WSE has admitted in its answer that it operated the Wal-Mart store in question. Accordingly, the Court grants Defendants' Motion to Dismiss Counts I and II (premises liability / negligence and loss of consortium) as to WSI and CMI.

## II.     Tortious Claim Handling Scheme

Count III of the Complaint asserts a claim for "Tortious Claim Handling Scheme." The Complaint alleges that, "Upon information and belief Defendants had a scheme that this video tape and all similar video tapes of similar incidents would admittedly be kept and then copies given to Plaintiffs <u>unless</u> the tape revealed more than simple negligence. . . . Pursuant to Defendants' scheme, the tape is now falsely stated to not exist." The Complaint further states that "A cause of action for actual damages is hereby stated against Defendants for fraud and/or tortious, deceptive practices."

The Mississippi Supreme Court has not recognized a cause of action for a "Tortious Claim Handling Scheme" and Defendants assert that no such cause of action exists under Mississippi law. Defendants further argue that Count III of Plaintiffs' Complaint is simply another way of alleging a cause of action for spoliation of evidence. Spoliation is "[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document." BLACK'S LAW DICTIONARY 1437 (8th ed. 2004). Spoliation has been explicitly rejected as an independent cause of action by the Mississippi Supreme Court. See <u>Dowdle Butane Gas Co., Inc. v. Moore</u>, 831 So. 2d 1124 (Miss. 2002) (intentional spoliation); <u>Richardson v. Sara Lee Corp.</u>, 847 So. 2d 821 (Miss. 2003) (negligent spoliation). The Court finds these cases very instructive to the case at bar.

In <u>Dowdle</u>, an underground propane tank exploded on Plaintiff Moore's property while an employee of Dowdle Gas Co. was delivering propane in the tank. <u>Dowdle</u>, 831 So. 2d at 1126. The tank was removed from the premises by employees of Dowdle and its insurer, Reliance, during their

5

investigation of the accident. Id. Moore filed suit, asserting, inter alia, a cause of action for spoliation of evidence. Id. at 1126-27. The Complaint alleged that "[Defendants] intentionally destroyed the propane tank, valves, regulator, and gas lines when they removed the same from his property and conducted destructive testing, depriving Moore of the ability to discover the cause of the explosion and thus, the ability to recover from Dowdle Gas." Id. at 1127. After a lengthy discussion of the tort of spoliation's origins in California, and an examination of other jurisdictions' experiences with the tort, the court ultimately refused to recognize an independent cause of action for spoliation. Id. at 1133-35.

The primary reason for declining to recognize spoliation as independent tort was the availability of non-tort remedies for litigation related misconduct, such as the spoliation inference,[3] discovery sanctions,[4] criminal penalties,[5] contempt sanctions, and disciplinary sanctions against attorneys who participate in spoliation.[6] Id. at 1127-28. The court noted the important policy interest favoring finality in adjudication, and also expressed concerns about a "spiral" of endless collateral litigation, interference with the rights of property owners, and uncertainty of the fact of harm. Id. at 1135. The court concluded that "Non-tort remedies for spoliation are sufficient in the

---

[3]Under the adverse inference doctrine, the non-offending party is entitled to a jury instruction that the jury may infer that spoliated evidence is unfavorable to the offending party. DeLaughter v. Lawrence Cnty., Hosp., 601 So. 2d 818, 822 (Miss. 1992); Whitt v. Stephens Cnty., 529 F.3d 278, 284 (5th Cir. 2008) ("Under the spoliation doctrine, a jury may draw an adverse inference 'that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party.'") (quoting Russell v. Univ. of Tex., 234 F. App'x 195, 207 (5th Cir. 2007)).

[4]See MISS. R. CIV. P. 37; FED. R. CIV. P. 37.

[5]MISS. CODE ANN. § 97-9-55; Dowdle, 831 So. 2d at 1127.

[6]MISS. R. PROF. CONDUCT 8.4.

vast majority of cases, and certainly, as the California courts learned after 14 years experience with this tort, any benefits obtained by recognizing the spoliation tort are outweighed by the burdens imposed." Id.

Similarly, in Richardson v. Sara Lee Corporation, the Plaintiff Richardson, while employed by Sara Lee, was injured on the job by a piece of equipment called an Orderpicker. Richardson, 847 So. 2d at 822. Richardson filed suit against the manufacturer of the Orderpicker, and his attorney sent Sara Lee a letter requesting that he be allowed to examine the Orderpicker. Id. Some time later Richardson served a subpoena duces tecum upon Sara Lee requesting documentation concerning the whereabouts of the Orderpicker. Id. Sara Lee responded that it no longer had the Orderpicker in its possession. Id. Richardson then filed suit against Sara Lee alleging negligent spoliation of evidence. Id. Citing Dowdle, the court refused to recognize a cause of action for negligent spoliation of evidence and affirmed the trial court's dismissal of Richardson's claims. Id. at 824.

Plaintiffs fail to meaningfully distinguish how their claims for a "tortious claims handling scheme" differ from a claim for spoliation of evidence. The gravamen of their accusations is that Defendants "withheld evidence" and "fraudulently den[ied] the existence of evidence" to "frustrate claims and the court system." In the section of the Complaint labeled "Damages for Tortious Claim Handling Scheme," it is alleged that "Defendants . . . engaged in a common course of corporate conduct aimed at continuously preventing Plaintiffs from viewing and utilizing the video tape to properly protect Plaintiffs' rights to achieve a fair trial. . . ."[7]

Plaintiffs have further failed to cite any relevant authority in support of the proposition that

---

[7]Defendants repeatedly point out they were under no obligation to produce the video to Plaintiffs until, at the earliest, pre-discovery disclosures.

7

a civil cause of action for "tortious claims handling" exists under Mississippi law or that such a cause of action is recognized in any other jurisdiction. Plaintiffs cite United American Ins. Co. v. Merrill, 978 So. 2d 613, 636-37 (Miss. 2008), for the proposition that, "In the insurance claims handling context, Mississippi law imposes a duty of good faith and fair dealing on insurers in claims handling, to prevent insurers from taking advantage of the system." However, Merrill speaks of the duty a liability insurer owed to its insured. Plaintiffs cite no authority for the proposition that WSI or CMI, who were neither Plaintiffs' insurer nor in any sort of contractual relationship with the Plaintiffs, owed the Plaintiffs a duty of good faith and fair dealing in handling or attempting to settle Plaintiffs' claims for premises liability.

Plaintiffs next argue that "such abuses [referring to Defendants' conduct] violate the public policy of this state as well as the rights of injured individuals to pursue legitimate claims through the judicial system," citing Maggette v. B & L Development Corp., 2010 WL 3522798, at *18 (N.D. Miss. Sept. 2, 2010). However, Maggette involved *the court* administering a dispositive sanction after years of discovery violations by the defendant. Id. Maggette provides no help for the Plaintiffs.

Plaintiffs have failed to provide any authority that a civil cause of action for "tortious claims handling" exists. Plaintiffs have further failed to distinguish how the cause of action asserted for Defendants' alleged "scheme" is any different than a cause of action for spoliation of evidence, which has been soundly rejected by the Mississippi Supreme Court. The present claim is the type of collateral litigation that the Mississippi Supreme Court sought to avoid by refusing to recognize the tort of spoliation. The Court concludes that, as a matter of law, Plaintiffs have failed to state a claim upon which relief can be granted for "tortious claims handling," and accordingly, the Court grants Defendants' Motion to Dismiss as to Count III.

**III.     Fraud**

Although the Complaint does not contain an actual count for fraud, paragraph 26 states "A cause of action for actual damages is hereby stated against Defendants for fraud and/or tortious, deceptive practices." The elements of a fraudulent or intentional misrepresentation are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. Trim v. Trim, 33 So. 3d 471, 478 (Miss. 2010) (citing McCord v. Healthcare Recoveries, Inc., 960 So. 2d 399, 406 (Miss. 2007)). A party alleging fraud is required to "state with particularity" the circumstances constituting the alleged fraud. FED. R. CIV. P. 9(b); see also MISS. R. CIV. P. 9(b) (same).

The Complaint alleges the following representations:

(1)     An unidentified Wal-Mart manager stated that the tape had been sent to corporate headquarters and would be preserved;

(2)     CMI employee Anderegg's statement to Dale Fikes that the tape was "put up."

(3)     Anderegg's statement to Carol Fikes to "[Not] worry, the tape is in a secure place."

(4)     CMI employee Peck's letter to Plaintiffs' attorney, which in part stated, "We do not have a video of the incident in question."

The Complaint then asserts:

23.     The Defendants assured Plaintiffs that the video tape of the incident had been sent to the Defendants and repeatedly assured Plaintiffs the tape was in a safe place. Plaintiffs justifiably relied upon these assurances and did not seek to have judicial involvement in the production of the tape prior to filing suit.

9

24. Upon information and belief Defendants had a scheme that this video tape and all video tapes of similar incidents would admittedly be kept and then copies given to the Plaintiffs <u>unless</u> the tape revealed more than simple negligence. . . . Pursuant to Defendants' scheme, the tape is now falsely stated not to exist.

As to representations one through three, the Complaint fails to assert that these representations were false. As to the fourth representation—a single sentence in a letter from CMI to Plaintiffs' attorney stating "We do not have a video of the incident"—the Complaint fails to allege that Plaintiffs were ignorant of the statements' falsity, that Plaintiffs relied on the truth of the statement, that they had a right to rely on the statement, or that they were consequently and proximately injured by reliance on this statement. Accordingly, the Complaint fails to state a plausible claim for fraud.

## IV. Civil Conspiracy

The fourth count of Plaintiffs' Complaint asserts a claim for civil conspiracy. Under Mississippi law, a civil conspiracy requires showing: "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." <u>Cooper Tire & Rubber Co. v. Farese</u>, 423 F.3d 446, 459 (5th Cir. 2005) (quoting <u>Gallagher Bassett Servs., Inc. v. Jeffcoat</u>, 887 So. 2d 777, 786 (Miss. 2004)).

Plaintiffs' civil conspiracy claims fail because they have not identified any unlawful overt act on the part of the Defendants WSI or CMI. Furthermore, "a civil conspiracy claim cannot stand alone, but must be based on an underlying tort." <u>Aiken v. Rimkus Consulting Group, Inc.</u>, 333 F. App'x 806, 812 (5th Cir. 2009) (citing <u>Wells v. Shelter Gen. Ins. Co.</u>, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002) (collecting cases)). Plaintiffs have not alleged a separate underlying tort which

10

could support a claim for conspiracy. Plaintiffs argue that "the conduct of the Defendants was for the unlawful purpose of withholding evidence and frustrating the judicial process," but fail to distinguish how this differs from accusing the Defendants of conspiring to commit spoliation. Accordingly, the Court concludes that the Complaint fails to state a claim for civil conspiracy.

## V. Aiding and Abetting

Count five of the Complaint asserts a cause of action for "Aiding and Abetting." The Complaint alleges that "Defendants, and each of them, did give substantial assistance or encouragement to the others in the conception and creation of, and in the implementation of and execution of, the fraudulent and/or tortious, deceptive scheme alleged in this Complaint."

The modern application of the tort of aiding and abetting can be traced to the Second Restatement of Torts Section 876(b). Aetna Cas. and Sur. Co. v. Leahey Const. Co., 219 F.3d 519, 532-33 (6th Cir. 2000). Section 876 provides, "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the others' conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. . . ." RESTATEMENT (SECOND) OF TORTS § 876(b)) (1979). The Mississippi Supreme Court has never recognized aiding and abetting as a civil cause of action, and Defendants argue that no such cause of action exists under Mississippi law. Alternatively, the Defendants assert that the Complaint fails to state a claim for aiding and abetting.

The Court need not reach the issue of whether the Mississippi Supreme Court would recognize the tort of aiding and abetting.[8] Assuming, without deciding, that the Mississippi Supreme

---

[8]The United States District Court for the Southern District of Mississippi predicted that the Mississippi Supreme Court would recognize a claim of aiding and abetting fraud in Dale v. ALA Acquisitions, Inc., 203 F. Supp. 694, 700-01 (S.D. Miss. 2002).

11

Court would recognize the tort of aiding and abetting as embodied in Restatement section 876(b), the Complaint fails to state a claim for civil aiding and abetting for the same reasons it fails to state a claim for civil conspiracy. That is, there must be an underlying tort for the Defendants to have aided and abetted. Because Plaintiffs have failed to state a claim for the alleged "tortious claims handling scheme," Plaintiffs' claims for aiding and abetting said scheme must also fail.

## CONCLUSION

Defendants' Motions to Dismiss [31, 33] are GRANTED.

SO ORDERED on this, the 26th day of September, 2011.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**